UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL BRADY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LIQUIDITY SERVICES, INC., )<br>)<br>Defendant. )<br>) | Civil Case No. 18-cv-1040 (RCL) |

## MEMORANDUM OPINION

Before the Court is defendant Liquidity Services, Inc.'s (LSI) Motion to Dismiss. After having considered the motion, the opposition and reply thereto, and the record herein, the Court will **GRANT** LSI's Motion to Dismiss.

## I. BACKGROUND

Plaintiff Daniel Brady worked as Vice President of Finance for LSI from 2013 until his termination in 2016. Compl. ¶¶ 1, 85. LSI had entered into a revenue sharing agreement with the Defense Logistics Agency (DLA), a federal government agency, to sell excess scrap metal from military bases. *Id.* ¶¶ 2, 3, 17, 20–21, 72.

In 2016, Brady completed an assignment to "develop an activity-based and/or resource-based approach to allocate IT expenses to each business unit for the FY17 Budget," and Brady found that this new approach resulted in "significantly" lower IT costs for FY16 and FY17, as it related to LSI's "profit-sharing Scrap business." *Id.* ¶¶ 65–66.

Brady's direct supervisor, LSI's Chief Financial Officer Jorge Celaya, called to discuss LSI's "scrap metal contract," or revenue sharing agreement, with the DLA. *Id.* ¶ 31. In response to Celaya's questions, Brady said that "if LSI had less IT costs . . . LSI would need to share with

1

the government" as "a matter of proper accounting and federal mandates." *Id.* ¶¶ 75, 77. Celaya replied, "I'm not sure if I see it that way." *Id.* ¶ 78. Brady replied that "doing it any other way would be illegal." *Id.* ¶ 6.

Brady immediately reported his conversation with Celaya to LSI's Chief Accounting Officer and "expressed his concerns about the measures Celaya would use." *Id.* ¶¶ 7–9, 79–80. The Chief Accounting Officer told Brady not to worry about it. *Id.* ¶ 80.

Days later, Celaya fired Brady. *Id.* ¶¶ 8, 81, 83. However, Brady had unused paid time off and remained an LSI employee until November 1, 2016. *Id.* ¶¶ 84–85.

In Count I of the Complaint, Brady alleges retaliation under § 3730(h) of the False Claims Act, 31 U.S.C. §§ 3729 *et seq*. Brady argues that he engaged in protected activity twice: (1) when he told Celaya "about proper accounting protocols that must be followed on LSI's scrap metal contract with the Defense Logistics Agency and that any other approach would be illegal," and (2) when he "reported concerns about an impending violation to the Chief Accounting Officer." *Id.* ¶¶ 94–95. Brady claims that he "disclosed potential accounting fraud" and was terminated "only days later." *Id.* at 8.

In Count II, Brady alleges that LSI violated § 32-1301 of the D.C. Wage Payment and Collection Law (DCWPCL), D.C. Code § 32-1301 *et seq.*, by failing to pay his "earned 2016 bonus." *Id.* ¶¶ 105–06. "Per [his] offer letter," Brady claims that the bonus amount is approximately $62,000, based on "qualitative and quantitative measures established by LSI as part of the Capital Assets Group." *Id.* ¶¶ 89. Brady alleges that, according to his offer letter, LSI will pay him a forty percent target bonus annually. *Id.* ¶ 86. Although "the offer letter does not state when the payment will be made or that Brady must be employed on a certain date to receive the

bonus," Brady claims that the bonus "generally occurs within 60 days" of the fiscal year's end on September 30. *Id.* ¶¶ 87–88.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). While FCA actions for fraud are evaluated under the heightened pleading standard of Rule 9(b), retaliation claims are evaluated under the standard Rule 8 pleading standard. *United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1259–60 (D.C. Cir. 2004).

### B. FCA Retaliation Claims

The FCA's whistleblower protection provision entitles an employee who, *inter alia,* is discharged or discriminated against in the terms and conditions of his employment, as the result of engaging in protected activity, "to all relief necessary to make that employee . . . whole." 31 U.S.C. § 3730(h) (2009). To prevail on an FCA whistleblower claim, an employee must demonstrate that:

> (1) he engaged in protected activity, that is, "acts done . . . in furtherance of an action under this section"; and (2) he was discriminated against "because of" that activity. To establish the

second element, the employee must in turn make two further showings. The employee must show that: (a) "the employer had knowledge the employee was engaged in protected activity"; (b) "the retaliation was motivated, at least in part, by the employee's engaging in [that] protected activity."

*Martin-Baker*, 389 F.3d at 1260 (alteration in original) (quoting *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998)); *accord Shekoyan v. Sibley Int'l*, 409 F.3d 414, 422 (D.C. Cir. 2005). In 2009, § 3730(h)(1) was amended and "significantly broadened" whistleblowers' protection by allowing retaliation claims based on: "acts done . . . in furtherance of an action under this section *or other efforts to stop 1 or more violations of this subchapter*." 31 U.S.C. § 3730(h)(1) (2009) (emphasis added); *see Hicks v. District of Columbia*, 306 F. Supp. 3d 131, 155 (D.D.C. 2018).

### III. ANALYSIS

#### A. Count I does not state a claim upon which relief may be granted.

Brady fails to demonstrate that he was engaged in protected activity and thus does not satisfy the first prong of the test. Brady also does not meet the second prong of the test—that Brady was discriminated against "because of" that activity—because he fails to show that LSI had knowledge that he was engaged in protected activity. Therefore, the Court need not evaluate whether the retaliation was motivated, at least in part, by Brady's engaging in protected activity.

#### 1. Brady failed to plead sufficient facts to plausibly state that he was engaged in protected activity.

Regarding the first element of a whistleblower retaliation claim, "[d]etermining whether an employee has engaged in protected conduct under the FCA is a 'fact specific inquiry.'" *Shekoyan*, 409 F.3d 414, 423 (D.C. Cir. 2005) (quoting *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 187 (3d Cir. 2001)). "An employee does not engage in protected conduct if he

'merely inform[s] a supervisor of the problem.'" *Shekoyan*, 409 F.3d at 423 (quoting *Zahodnick v. IBM Corp.*, 135 F.3d 911, 914 (4th Cir. 1997)). "Mere dissatisfaction with one's treatment on the job is not . . . enough. Nor is an employee's investigation of nothing more than his employer's noncompliance with federal or state regulations." *Id.* (alteration in original) (citing *Yesudian*, 153 F.3d at 741). Rather, "[i]t is sufficient that a plaintiff be investigating matters that reasonably could lead to a viable False Claims Act case." *Williams*, 389 F.3d at 1260 (quoting *Yesudian*, 153 F.3d at 740).

"The retaliation provision of the FCA 'was designed to protect persons who assist the discovery and prosecution of fraud and thus to improve the federal government's prospects of deterring and redressing crime.'" *United States ex rel. Tran v. Computer Sciences Corp.*, 53 F. Supp. 3d 104, 135 (D.D.C. 2014) (quoting *Schweizer*, 677 F.3d at 1237) (internal quotation marks and citation omitted). With its 2009 addition, § 3730 now protects employees in their efforts to stop a violation of the FCA and covers employees who "are collecting information about a possible fraud, *before* they have put all the pieces of the puzzle together." *Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 99 (D.D.C. 2014) (quoting *Yesudian* 153 F.3d at 740) (emphasis in original). Actually proving a violation of the FCA is not an element of a retaliation claim, and § 3730 "protects an employee's conduct even if the target of an investigation or action to be filed was innocent." *Hoyte v. American Nat. Red Cross*, 518 F.3d 61, 69 (D.C. Cir. 2008) (quoting *Graham County Soil & Water Conservation District v. United States ex rel. Wilson*, 545 U.S. 409, 416 (2005)). Although "a well-pleaded retaliation complaint need not allege that the defendant submitted a false claim," the complaint "must allege that the defendant retaliated against him for engaging in . . . protected conduct." *Id.* (internal quotation marks omitted). Again, protected

activity is conduct that "'reasonably could lead' to a viable False Claims Act case." *Id.* (citing *Yesudian*, 153 F.3d at 740).

Brady's conduct could not reasonably lead to a viable False Claims Act case. Brady reported "concerns about an impending violation" to LSI's Chief Accounting Officer. Compl. ¶ 95. He states, "Had LSI used improper accounting procedures, the Defense Logistics Agency would have received a lower profit share[.]" Pl.'s Opp. At 10. But Brady does not allege a violation actually took place, nor does he allege LSI took steps to commit, or conspired to commit, fraud upon the government. Brady instead acknowledges that he knew that his claimed protected activity was in advance of any fraudulent conduct. In other words, Brady knew there was no violation. Yet Brady does not cite—and the court cannot find—any case in which a plaintiff successfully brought an FCA retaliation claim for actions taken in advance of any actual fraudulent conduct knowing that no fraud had taken place. This Court is not willing to expand the statute's text to encompass prevention of a hypothetical future fraud, rather than investigating a possible ongoing fraud, against the government. Therefore, the Court finds that Brady's conduct could not reasonably lead to a viable FCA case and dismisses Count I for failure to state a claim upon which relief may be granted.

### 2. Even if the Court were to find that Brady engaged in protected activity, the Court would find that the second prong of the test—that Brady was discriminated against "because of" that protected activity—was not satisfied.

#### a. Brady failed to plead sufficient facts to plausibly state that LSI had knowledge that Brady was engaged in protected activity.

"Unless the employer is aware that the employee is investigating fraud, . . . the employer could not possess the retaliatory intent necessary to establish a violation of § 3730(h)." *Williams*, 389 F.3d at 1260–61 (second alteration in original) (quoting *Yesudian*, 153 F.3d at 744). Plaintiffs who allege that "performance of their normal job responsibilities constitutes protected activity

6

must 'overcome the presumption that they are merely acting in accordance with their employment obligations' to put their employers on notice." *Id.* at 1261 (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 568 (6th Cir. 2003)); *see Schweizer*, 677 F.3d at 1238 (finding that the retaliation claim could not succeed unless plaintiff "alerted [her employer] Océ of her protected conduct by acting outside her normal job responsibilities, notifying a party outside the usual chain of command, advising Océ to hire counsel, or taking 'any [other] action which a factfinder reasonably could conclude would put [Océ] on notice that litigation [was] a reasonable possibility'").

Brady does not provide any facts showing that he engaged in activity outside his normal job responsibilities as Vice President of Finance. It was LSI's CFO Celaya who initiated the call with Brady to discuss the scrap metal contract with DLA. Compl. ¶ 71. And while Brady reported concerns arising from this conversation with Celaya to LSI's Chief Accounting Officer, the Complaint is unclear as to whether the Chief Accounting Officer is outside Brady's usual chain of command. Although internal reporting may qualify as protected activity under § 3730(h), the Court finds that Brady has not overcome the presumption that he was merely acting in accordance with his employment obligations as Vice President of Finance and thus did not put LSI on notice that litigation was a reasonable possibility. *See Williams*, 389 F.3d at 1261.

### B. Count II does not state a claim upon which relief may be granted.

In Count II, Brady claims that the DCWPCL mandates that LSI pay him a $62,000 bonus. The DCWPCL, D.C. Code § 32-1301 *et seq.* (2010), requires employers to make timely payment of all outstanding wages owed to employees who quit, resign, or are released by the employer. D.C. Code § 32-1303(1)–(2). The DCWPCL broadly defines "wages" as "monetary compensation after lawful deductions, owed by an employer for labor or services rendered, whether the amount is determined on a time, task, piece, commission, or other basis of calculation." *Id.* § 32-1301(3).

7

"'Bonuses' are covered under the D.C. Wage Payment Act only when they are 'owed,' and discretionary payments are not owed, but are given only by leave of the employer." *Dorsey v. Jacobson Holman, PLLC*, 756 F. Supp. 2d 30, 36–37 (D.D.C. 2010), *aff'd*, 476 F. App'x 861 (D.C. Cir. 2012); *see Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 134 (D.D.C.), *motion to certify appeal granted sub nom. Molock v. Whole Foods Mkt. Grp., Inc.*, 317 F. Supp. 3d 1 (D.D.C. 2018) (finding that the plaintiffs sufficiently alleged bonuses to be "wages" under the DCWPCL when the bonuses were not subject to the employer's discretion, but "rather automatic and mandatory upon satisfaction of the condition that the department in which Plaintiffs were employed obtained a surplus").

Brady has failed to plead sufficient facts to substantiate by reasonable inference that LSI owed him a bonus and thus fails to state a claim under the DCWPL. From the complaint, Brady's claim appears to be premised on his offer letter. *See* Compl. ¶ 89 ("Per Brady' offer letter, LSI owed Brady a bonus of approximately $62,000.") But the offer letter explicitly states it does "not constitute an expressed or implied contract." Def.'s Mot. to Dis. Exhibit 1 at 2–3 (emphasis added).[1]

Even if the Court were to find that the offer letter constituted a binding agreement, the bonus language in that letter appears discretionary and therefore not owed. The offer letter states that a "40% target bonus" will be "paid annually *based on objectives set between you and your manager.*" Def.'s Mot. to Dis. Exhibit 1 at 2. Yet, the complaint contains no allegations that Brady

---

[1] Brady's offer letter may be considered on LSI's Motion to Dismiss under Rule 12(b)(6), without converting the motion to one for summary judgment, because Brady referenced the offer letter in his Complaint and the offer letter is integral to his DCWPCL claim. *See* Compl. ¶¶ 86–87, 89; *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (finding that documents attached to a motion to dismiss and whose authenticity was not in dispute may be considered because they are "referred to" in the complaint and "integral to" the plaintiff's claim); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference . . . .").

met those objectives. Instead, Brady relies entirely on conclusory allegations that he is owed the bonus. Furthermore, the offer letter states that "any provision[] contained herein may be modified and/or revoked without notice." Def.'s Mot. to Dis. Exhibit 1 at 2. Without more facts to demonstrate that the bonus allegedly owed to Brady is "automatic and mandatory," *see Whole Foods*, 297 F. Supp. 3d at 134, the Court must dismiss Count II for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Brady failed to state a claim upon which relief may be granted. Therefore, the Court will **GRANT** LSI's Motion to Dismiss.

A separate order shall issue this date.

SIGNED this 24th day of November, 2018.

                                                  Royce C. Lamberth
                                                  United States District Judge